IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION


ANGIE L. SMITH                        )
                                      )
v.                                    )        No. 2:13-0051
                                      )
NANCY A. BERRYHILL[1]                 )
Acting Commissioner of Social Security )


## MEMORANDUM OPINION

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Social Security Administration ("Commissioner"), denying Plaintiff's claim for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"), as provided under Titles II and XVI of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket Entry No. 17), to which Defendant has responded (Docket Entry No. 19). This action is before the undersigned for all further proceedings pursuant to the consent of the parties and referral of the District Judge in accordance with 28 U.S.C. § 636(c) (Docket Entry No. 22).

Upon review of the administrative record as a whole and consideration of the parties' filings, Plaintiff's motion is **DENIED**, and the decision of the Commissioner is **AFFIRMED**.

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for former Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

## I.  INTRODUCTION

Plaintiff filed applications for a period of disability, DIB, and SSI on May 13, 2010. *See* Transcript of the Administrative Record (Docket Entry No. 11) at 94-95.[2] She alleged a disability onset date of June 17, 2005. AR 94- 95. Plaintiff asserted that she was unable to work because of back problems, hip problems, a right wrist injury, and depression. AR 105.[3]

Plaintiff's applications were denied initially and upon reconsideration. AR 94-97. Pursuant to her request for a hearing before an administrative law judge ("ALJ"), Plaintiff appeared with counsel and testified at a hearing before ALJ Frank Letchworth on September 1, 2011. AR 38. On September 30, 2011, the ALJ denied the claim. AR 19-21. On May 16, 2013, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (AR 1-4), thereby making the ALJ's decision the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g).

## II.  THE ALJ FINDINGS

The ALJ issued an unfavorable decision on September 30, 2011. AR 19-21. Based upon the record, the ALJ made the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2. The claimant has not engaged in substantial gainful activity since November 26, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

---

[2] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding page number(s) as numbered in large black print on the bottom right corner of each page. All other filings are hereinafter referenced by the abbreviation "DE" followed by the corresponding docket entry number and page number(s) where appropriate.

[3] The Commissioner also found evidence of anxiety and decreased far visual acuity. AR 105.

3. The claimant has the following severe impairments: disorder of lower back (discogenic and degenerative); positive test for Hepatitis C virus; depressive disorder, not otherwise specified; and anxiety disorder, not otherwise specified (20 CFR 404.1520(c) and 416.920(c)).

\*\*\*

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

\*\*\*

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of light exertion. She can occasionally climb ramps or stairs, or balance, kneel, crouch, or perform fine manipulation. She can further occasionally stoop. She cannot climb ladders, ropes, or scaffolds. She can have only occasional and casual interaction with the general public.

\*\*\*

6. The claimant is capable of performing past relevant work as a security guard, machine operator, or cashier. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

\*\*\*

7. The claimant has not been under a disability, as defined in the Social Security Act, from November 26, 2008, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

AR 24-30.

# III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

# IV. DISCUSSION AND CONCLUSIONS OF LAW

## A. Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (i) whether the decision of the Commissioner is supported by substantial evidence, and (ii) whether the Commissioner made legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (adopting and defining substantial evidence standard in context of Social Security cases); *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010). The Commissioner's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially similar to that in *Richardson*).

The Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions

of credibility. *See, e.g.*, *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record as a whole is without substantial evidence to support the ALJ's determination. 42 U.S.C. § 405(g). *See, e.g.*, *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

## B. Determining Disability at the Administrative Level

The claimant has the ultimate burden of establishing an entitlement to benefits by proving her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). The asserted impairment(s) must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. §§ 432(d)(3) and 1382c(a)(3)(D); 20 C.F.R. §§ 404.1512(a), (c), and 404.1513(d). "Substantial gainful activity" not only includes previous work performed by the claimant, but also, considering the claimant's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which the claimant lives, or whether a specific job vacancy exists, or whether the claimant would be hired if she applied. 42 U.S.C. § 423(d)(2)(A).

In the proceedings before the Social Security Administration, the Commissioner must employ a five-step, sequential evaluation process in considering the issue of the claimant's alleged disability. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must show that she is not engaged in "substantial gainful activity" at the time disability benefits are sought. *Cruse v.*

*Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007); 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must show that she suffers from a severe impairment that meets the 12-month durational requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Edwards v. Comm'r of Soc. Sec.*, 113 F. App'x 83, 85 (6th Cir. 2004). Third, if the claimant has satisfied the first two steps, the claimant is presumed disabled without further inquiry, regardless of age, education or work experience, if the impairment at issue either appears on the regulatory list of impairments that are sufficiently severe as to prevent any gainful employment or equals a listed impairment. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant is not required to show the existence of a listed impairment in order to be found disabled, but such showing results in an automatic finding of disability that ends the inquiry. *See Combs, supra*; *Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989).

If the claimant's impairment does not render her presumptively disabled, the fourth step evaluates the claimant's residual functional capacity in relationship to her past relevant work. *Combs, supra.* "Residual functional capacity" ("RFC") is defined as "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1). In determining a claimant's RFC, for purposes of the analysis required at steps four and five, the ALJ is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. §§ 423(d)(2)(B), (5)(B); *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir. 1988). At the fourth step, the claimant has the burden of proving an inability to perform past relevant work or proving that a particular past job should not be considered relevant. *Cruse*, 502 F.3d at 539; *Jones*, 336 F.3d at 474. If the claimant cannot

satisfy the burden at the fourth step, disability benefits must be denied because the claimant is not disabled. *Combs*, *supra.*

If a claimant is not presumed disabled but shows that past relevant work cannot be performed, the burden of production shifts at step five to the Commissioner to show that the claimant, in light of the claimant's RFC, age, education, and work experience, can perform other substantial gainful employment and that such employment exists in significant numbers in the national economy. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (quoting *Walters v. Comm'r of Soc. Sec.*, 402 F.3d 525, 529 (6th Cir. 1997)). *See also Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). To rebut a *prima facie* case, the Commissioner must come forward with proof of the existence of other jobs a claimant can perform. *Longworth*, 402 F.3d at 595. *See also Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S. Ct. 2428, 77 L. Ed. 2d 1315 (1983) (upholding the validity of the medical-vocational guidelines grid as a means for the Commissioner of carrying his burden under appropriate circumstances). Even if the claimant's impairments prevent the claimant from doing past relevant work, if other work exists in significant numbers in the national economy that the claimant can perform, the claimant is not disabled. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). *See also Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028-29 (6th Cir. 1990); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88-89 (6th Cir. 1985); *Mowery v. Heckler*, 771 F.2d 966, 969-70 (6th Cir. 1985).

If the question of disability can be resolved at any point in the sequential evaluation process, the claim is not reviewed further. 20 C.F.R. § 404.1520(a)(4). *See also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (holding that resolution of a claim at step two of the evaluative process is appropriate in some circumstances).

**C. The ALJ's Five-Step Evaluation of Plaintiff**

In the instant case, the ALJ resolved Plaintiff's claim at step four of the five-step process. The ALJ found that Plaintiff met the first two steps, but determined at step three that Plaintiff was not presumptively disabled because she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four, the ALJ found that Plaintiff was able to perform past relevant work as a security guard, machine operator, and cashier, and thus concluded that Plaintiff has not been under a disability since the alleged onset date of November 26, 2008. AR 24-30.

**D. Plaintiff's Assertions of Error**

Plaintiff argues that the ALJ erred by (1) rejecting the opinion of the treating physician; (2) improperly evaluating Plaintiff's mental impairments; (3) improperly evaluating Plaintiff's credibility; and (4) finding that Plaintiff did not require the use of a cane. DE 18 at 24. Plaintiff therefore requests that this case be reversed and benefits awarded, or, alternatively, remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration. *Id.* at 28.

Sentence four of 42 U.S.C. § 405(g) states the following:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. § 405(g), 1383(c)(3). "In cases where there is an adequate record, the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential

factual issues have been resolved and the record adequately establishes a claimant's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994). The Court will address each of Plaintiff's assertions of error below.

**1. The weight given to the treating physician's opinion.**

Plaintiff argues that the ALJ erred by rejecting the opinion of Dr. P.K. Jain, who completed a medical source statement ("MSS") containing severe physical restrictions in August of 2011. Plaintiff claims that Dr. Jain's opinion was "sufficiently supported by medical findings," and cites as evidence a functional capacity evaluation ("FCE") completed by a physical therapist in May of 2007, an x-ray of Plaintiff's lumbar spine performed in January of 2009, and two MRI studies from 2009 and 2011, respectively. *Id*. at 25-26.[4]

It is well established that an ALJ must give a treating physician's opinion controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(c)(2)). Although not addressed by Plaintiff, the ALJ in this case suggested, but did

---

[4] Plaintiff's citations do not correspond to the imaging studies referenced in her brief. For example, Plaintiff cites an x-ray of Plaintiff's lumbar spine to pages 359-61 of the administrative record, which actually consist of handwritten notes by a nurse practitioner. AR 359-61. Plaintiff also cites an MRI from 2009 to pages 463 and 529 of the administrative record, which actually involve an office note from 2006 and a case manager report from Volunteer Behavioral Health Care System. AR 463, 529. However, the undersigned believes that the studies that Plaintiff attempts to cite have been located and will be referenced by their appropriate page numbers.

The Court also notes that none of the opinions cited in Plaintiff's brief include citations to specific page numbers. Additionally, multiple citations contain typographical errors, one of which prevents the undersigned from being able to locate the Sixth Circuit opinion that is cited. *See* DE 18 at 24-25. While the Court certainly does not expect the parties' briefs to be typographically flawless, counsel would do well to at least proofread any memorandum being submitted for review.

not explicitly find, that Dr. Jain does not qualify as a "treating source" for purposes of 20 C.F.R. § 404.1527(c)(2)) by referencing Plaintiff's testimony that she had only treated with Dr. Jain on one occasion prior to completion of the MSS. AR 29, 46. The ALJ also noted that Plaintiff's single visit with Dr. Jain involved treatment for a rash, and not for any condition at issue in her claim for disability benefits. AR 29, 46. Defendant contends that this single visit fails to demonstrate the "ongoing treatment relationship" necessary to establish Dr. Jain's status as a "treating source" under 20 C.F.R. § 404.1502. DE 19 at 14. Plaintiff has not responded to this argument.

Despite these shortcomings, the Court does not agree that Dr. Jain fails to qualify as a treating source. Plaintiff received treatment from nurses and nurse practitioners with Dr. Jain's office at Cookeville Medical Center for nearly a year in 2011. AR 808-68. While these providers represent "other sources" whose opinions are not entitled to controlling weight,[5] Dr. Jain discussed findings from imaging studies and made recommendations regarding Plaintiff's course of treatment multiple times during this period. AR 810, 818, 827-28, 852. Dr. Jain also ordered subsequent imaging studies based on Plaintiff's progress and opined on her condition. AR 852, 869. The Court finds that this involvement in Plaintiff's treatment is sufficient to constitute an

---

[5] *See Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 550 (6th Cir. 2014). The Court notes, however, the following instruction contained in Social Security Ruling ("SSR") 06-03p:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners ... have increasingly assumed a greater percentage of the treatment and evaluation functions handled primarily by physicians and psychologists. Opinions from these medical sources who are not technically deemed "acceptable medical sources," under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other evidence in the file.

2006 WL 2329939, at *3 (August 9, 2006).

"ongoing treatment relationship" such that Dr. Jain's MSS opinion is within the scope of the "treating physician rule" contained in 20 C.F.R. § 404.1527(c)(2). The issue, therefore, is whether the ALJ provided good reasons for rejecting Dr. Jain's opinion.

In addition to Dr. Jain's lack of actual treatment of Plaintiff, the ALJ provided the following reasons for rejecting the MSS:

> [D]r. Jain's assessment is incredibly over-restrictive, and thus internally inconsistent. He remarks about what "the patient states." Therefore, Dr. Jain's conclusions appear to also be tenuous and patently sympathetic to the claimant's subjective complaints. Moreover, Dr. Jain's determinations are unsupported by the objective medical findings in his treatment records.

AR 29. The restrictions suggested by Dr. Jain are indeed severely restrictive. Dr. Jain opines that Plaintiff should be held to the lowest possible physical standards with respect to lifting and/or carrying (less than 10 pounds occasionally) and standing and/or walking (less than two hours per eight-hour workday). AR 802. Dr. Jain also opined that Plaintiff could sit for less than six hours during a workday, would be required to miss work more than four times per month, and would be "incapable of even 'low stress jobs.'" AR 802-03. Dr. Jain further claimed that Plaintiff's pain would "constantly" interfere with her ability to maintain attention and concentration. AR 803.

Notably, Dr. Jain failed to reference any imaging studies as support for the severe limitations contained in the MSS. Nevertheless, Plaintiff argues that these limitations are supported by three separate imaging studies, a 2009 x-ray and MRI studies performed in 2009 and 2011. These studies, however, appear to demonstrate relatively normal findings. The 2009 x-ray of Plaintiff's lumbar spine demonstrated mild scoliosis, with no evidence of compression and well-maintained intervertebral disc spaces. AR 363. The 2009 MRI of Plaintiff's lumbar spine revealed a disc bulge at the L4-5 level, but no evidence of disc herniation or postoperative scar formation. AR 444. The additional MRI of Plaintiff's lumbar spine performed in 2011 again

showed a bulging disc at the L4-5 level, but no evidence of herniation. AR 869. These findings appear to instead support Dr. Jain's previous diagnosis of Plaintiff's lumbar condition as a mere "back ache." AR 818.

Dr. Jain's opinion regarding the severity of Plaintiff's hip pain is also undermined by objective medical evidence. Indeed, Dr. Jain reviewed the findings from a 2011 x-ray of Plaintiff's hip and noted that such findings were completely normal. AR 852. Despite these findings, Dr. Jain supported the severe restrictions in the MSS related to lifting, carrying, standing, walking, and sitting by stating, in part, that "[Plaintiff] has left hip [pain] since 2010 and was told that she has bursitis." AR 803. Notably, Plaintiff does not dispute the ALJ's findings with respect to her hip, instead conceding that a CT of her left hip taken approximately two months prior to her hearing was completely normal. DE 18 at 12; AR 822. An x-ray of her left hip just one month before her hearing similarly showed a "[n]ormal left hip," with "[n]o fractures, dislocations or destructive lesions." AR 761.

Dr. Jain's notation that Plaintiff "was told that she had bursitis" also supports the ALJ's decision to reject the MSS based on Dr. Jain's reliance on Plaintiff's complaints instead of objective medical findings. Plaintiff points to no evidence in the record to suggest that she suffers from bursitis, and the Court sees no indication that Dr. Jain ever diagnosed Plaintiff with bursitis. Nevertheless, Dr. Jain cites bursitis as support for several of the limitations contained in the MSS. AR 802-03. As discussed by the ALJ, Dr. Jain additionally relied on Plaintiff's subjective complaints to implement environmental limitations. AR 805. Throughout, Dr. Jain appears to have relied extensively on Plaintiff's subjective complaints to implement all of the restrictions contained in the MSS, repeatedly noting that Plaintiff has back pain without referencing any imaging studies, examination findings, or other objective evidence to support her

opinion. AR 803-04. The Sixth Circuit has held, however, that a subjective assessment of pain symptoms, while relevant to determining whether a claimant suffers from a disability, is not conclusive evidence that establishes a disability. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) (internal citations omitted).

Plaintiff's citation to an FCE completed by a physical therapist in May of 2007 similarly fails to support the restrictions contained in the MSS. The FCE cited by Plaintiff does not demonstrate "chronic inflammation of her left sciatic nerve, trunk stiffness and weakness," as she claims (DE 18 at 25), but instead lists raw medical data regarding Plaintiff's strength and range of motion. AR 391-95.[6] There is no diagnosis of any condition contained in the FCE, although it does provide an opinion as to Plaintiff's "working classification" that, interestingly, places Plaintiff in the "sedentary – light" level (AR 391), which appears to closely match the ALJ's determination that Plaintiff can perform a range of work at the "light" exertion level. AR 27. The Court also notes that, as discussed in greater detail below, Plaintiff's previous treating physician, Dr. Roy Terry, repeatedly found that Plaintiff provided little effort during her physical examinations during the course of his treatment between 2005 and 2009, thus undermining the validity of any FCE performed during that time. Regardless, the FCE cited by Plaintiff does nothing to support the severe restrictions contained in Dr. Jain's MSS.

Other than this FCE, Plaintiff argues that the ALJ improperly rejected Dr. Jain's opinion based solely on three imaging studies of Plaintiff's lumbar spine, none of which demonstrated significant findings. Plaintiff makes no argument with respect to her alleged hip pain or wrist

---

[6] Although Plaintiff claims that the FCE stated that she suffered from "chronic inflammation of her left sciatic nerve, trunk stiffness and weakness," this quote appears to come from the opinion of the ALJ who, notably, denied Plaintiff's previous claims for DIB and SSI. AR 88, 92-93. However, Plaintiff points to no evidence of such a diagnosis in the record.

issues even though these conditions were also used as support for the severe restrictions contained in the MSS. AR 803-05. This is significant in light of the complete lack of objective medical evidence to support Dr. Jain's opinion regarding the severity of these conditions as well. Additionally, as noted by the ALJ, Dr. Jain cited wrist pain as support for Plaintiff's prescribed limitations despite the fact that Plaintiff never discussed any problems regarding her wrist with providers at Cookeville Medical Center. AR 29, 50-51. It was therefore not inappropriate for the ALJ to discount the MSS based on a lack of objective evidence and Dr. Jain's apparent willingness to apply restrictions that would preclude work based solely on Plaintiff's responses to questions contained in the MSS regarding the severity of her conditions. AR 29, 48. Accordingly, the Court finds that substantial evidence supports the ALJ's rejection of Dr. Jain's opinion.

## 2. The assessment of Plaintiff's mental impairments.

Plaintiff next contends that the ALJ failed to properly evaluate her alleged mental impairments. Plaintiff fails to discuss how the ALJ erred in his assessment of her mental condition, and instead recites the findings from various mental health records that include uncited case management notes from "United Health Care" and "Plateau Mental Health Center." DE 18 at 26-27.[7] According to Plaintiff, these records demonstrate that Plaintiff was "only able to care for her personal needs three times weekly," that she needed assistance in performing activities of daily living, and that she received global assessment of functioning ("GAF") scores of 45 and 50 between 2007 and 2010. *Id.*

---

[7] Plaintiff fails to cite the notes she references from "July 2010," "September 2010," and July 19, 2011, and incorrectly cites to records from "Plateau Mental Health Center," with the citations provided actually reflecting care received from Tennessee Sports Medicine & Orthopaedics, Occupational Health Center, and Cookeville Regional Medical Center for physical conditions. DE 18 at 26-27; AR 336-55, 373).

As an initial matter, Plaintiff provides no explanation as to how these assigned GAF scores demonstrate a disabling mental impairment. Indeed, Plaintiff fails to even describe the symptoms associated with the specific GAF scores assigned to her. Regardless, the Court notes that GAF scores of 45 and 50 are not, by themselves, evidence of a disabling mental impairment. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007) ("[T]he record supports a GAF in the high 40s to mid 50s, which would not preclude [the claimant] from having the mental capacity to hold at least some jobs in the national economy."). More importantly, there is extensive case law from this circuit indicating that GAF scores are not requisite to an ALJ's analysis of mental impairment. *See Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir. 2007) ("[T]he Commissioner has declined to endorse the [GAF] score for use in the Social Security and SSI disability programs, and has indicated that [GAF] scores have no direct correlation to the severity requirements of the mental disorders listings.") (internal citations and quotations omitted); *Keeler v. Comm'r of Soc. Sec.*, 511 F. App'x 472, 474 (6th Cir. 2013) ("[T]he ALJ was not required to consider [the claimant's] GAF scores[.]") (internal citations omitted); *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511 (6th Cir. 2006) ("[W]e are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place."). Plaintiff's bald reference to GAF scores provides no grounds that the ALJ improperly assessed Plaintiff's mental condition.

Further, Plaintiff's uncited references to "home health care" that she received from a case manager are similarly unavailing.[8] DE 18 at 26. In fact, the "progress note" from July 19, 2011

---

[8] Again, the Court believes that the records Plaintiff incorrectly cites have been identified, and the Court will reference these records by their appropriate page numbers. If the Court is mistaken in its assessment or determination of the records upon which Plaintiff relies, that fault rests with Plaintiff for not having correctly cited the record in the first instance.

referenced by Plaintiff actually indicates that her condition was *improving*, with the case manager noting that "[p]rogress has been made [] on her mental health goal[.]" AR 787.[9] Similarly, Plaintiff notes that she received "respite care" in April of 2010 for anxiety and depression, but her discharge note indicates that she improved as a result of such care, with Plaintiff admitting that she gained a "different outlook on life." AR 578. Plaintiff additionally notes that she was receiving assistance with respect to her personal hygiene and reporting anxiety in crowds in September of 2010 (DE 18 at 27), but a case management note from June of 2011 states that "progress has been made on her social goal[.]" AR 790. Plaintiff has therefore failed to provide any support for her implicit argument that she suffers from a disabling mental impairment.

The ALJ ultimately concluded that Plaintiff's "depressive disorder" and "anxiety disorder" both represented severe impairments. AR 24. However, the ALJ additionally noted the significant lack of evidence in the record that would support a finding that either of these impairments caused disabling symptoms: "no treating or examining physician or psychological counselor placed significant limits on the claimant due to her mental health or indicated that the claimant is mentally disabled." AR 30. Plaintiff provides no evidence to rebut this finding, and instead relies on case management notes documenting counseling sessions with a registered nurse who has not provided any opinion regarding the severity of Plaintiff's alleged mental condition. This is insufficient, as it is the claimant's burden to prove both a severe impairment and functional limitations that preclude the claimant's ability to work. *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997) ("Claimant has the ultimate burden of proving the existence of a

---

[9] The Court notes that one of Plaintiff's stated goals was to obtain "[i]ncome – to be able to pay her bills" by applying for disability benefits. AR 787.

disability.") (citing *Richardson v. Heckler*, 750 F.2d 506, 509 (6th Cir. 1984)); *Krakow v. Comm'r of Soc. Sec.*, No. 13-14388, 2015 WL 1301300, at *10 (E.D. Mich. Mar. 23, 2015) ("[S]imply because [a claimant] suffers from certain conditions or carries certain diagnoses does not equate to disability[.]"). Plaintiff has thus failed to carry this burden with respect to her alleged mental impairments.

### 3. The ALJ's credibility determination.

Plaintiff asserts that the ALJ "erred as a matter of law" in the evaluation of her credibility. DE 18 at 27. Plaintiff lists the factors found in SSR 96-7p and 20 C.F.R. § 404.1529 that the ALJ is required to consider when assessing a claimant's credibility, but provides no discussion as to how the ALJ's credibility determination was flawed. Indeed, the only actual argument proffered by Plaintiff includes a statement that, "[t]he statements and reports of [Plaintiff] both at her hearing and when seeing her doctors are consistent with her reports of disabling pain, depression and anxiety." DE 18 at 27.

An ALJ's credibility finding is entitled to deference due to the ALJ's "unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). The ALJ is permitted to "dismiss a claimant's allegations of disabling symptomatology as implausible if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict." *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1030 (6th Cir. 1990). The Sixth Circuit has also stated that a claimant who challenges an ALJ's credibility determination "face[s] an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005).

The ALJ in this case provided a detailed discussion of his credibility findings. AR 27-30. He discussed the lack of objective medical findings to support the presence of any significant

physical medical impairments. AR 28. He similarly noted the lack of any indication in the record that Plaintiff suffered from a disabling mental impairment. AR 29-30. The ALJ also discussed Plaintiff's attempts to gain employment as a medical transcriptionist after graduating with an associate degree in November of 2010, approximately two years after her alleged disability onset date, including her failure to follow up on potential employment offers because she "believed the jobs were out of her area of expertise," and not due to any medical condition. AR 27, 30. Plaintiff admitted this during her hearing:

> ALJ: Are you saying these were jobs that didn't interest you or these were jobs that you could not perform?
>
> Plaintiff: Jobs that I could not perform.
>
> ALJ: And why could you not perform them?
>
> Plaintiff: I never really – I didn't take accounting, so –
>
> ALJ: Out of your area of expertise?
>
> Plaintiff: Right, yes, sir.
>
> ALJ: Was that the only reason you did not feel you could perform these jobs? If someone had emailed you … and said we'd like you to do some on-line or some type of medical transcription, you think you might have responded to an email like that?
>
> Plaintiff: Yes, sir, I might have.

AR 53-54. Finally, the ALJ emphasized the findings of Dr. Donita Keown, who performed a consultative examination of Plaintiff in July of 2010, which included "significant pain behaviors and symptom magnification," as well as "[m]ultiple inconsistencies" with respect to Plaintiff's claims of pain. AR 28-29, 624-26. Therefore, contrary to Plaintiff's assertion otherwise, her statements both to providers and the ALJ fail to demonstrate consistency that would support her allegations of disabling pain.

Consistency between a claimant's subjective complaints and the record evidence "tends to support the credibility of the claimant, while inconsistency … should have the opposite effect." *Rogers*, 486 F.3d at 247-48. Moreover, as long as the ALJ cites "substantial, legitimate evidence to support his factual conclusions, we [must not] second-guess[.]" *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012). The Court finds that the ALJ well supported his conclusions with such substantial and legitimate evidence, and thus finds no error in his credibility determination.

### 4. Plaintiff's use of a cane.

Plaintiff's extremely brief final argument involves her use of a cane. After claiming that a previous treating physician, Dr. Roy Terry, "prescribed a quad cane" for her in 2006, Plaintiff cites SSR 96-9 to argue that "[a]n individual who is required to use a cane for walking cannot perform the six hours of standing and walking required for light work. Even the performance of sedentary work may be impacted by the use of a cane."[10]

The Court notes that the necessity of Plaintiff's cane has not been established in the record, as she claims. It is true that Plaintiff *requested* that Dr. Terry prescribe a cane for her in January of 2006, which was granted. AR 470. The record also indicates, however, that Dr. Terry expressed numerous concerns regarding Plaintiff's lack of effort and exaggeration of symptoms that undermine any claim for the necessity of the cane. Immediately prior to her request for a cane, Dr. Terry denied her request for a walker based on physical therapy records indicating that there was no need for such a device: "[Plaintiff] did not have any difficulties and had a physical

---

[10] In referencing SSR 96-9p, Plaintiff again fails to provide a specific citation for the passage to which she refers. Plaintiff instead again asks the Court to locate the particular passage from the 10 pages that comprise SSR 96-9p.

therapy assessment in the hospital with no recommendation for a walker[.]" AR 471. Three months earlier, Dr. Terry questioned the veracity of Plaintiff's description of her alleged injury, noting disparities between the history of the injury that she relayed to him and the medical history documented by another physician. AR 476-77. Approximately three months after she requested the cane, Dr. Terry noted that Plaintiff was exhibiting "pain behavior" and raised concerns about Plaintiff's physical efforts, stating that she "should be able to increase her activity levels without significant problems." AR 465-66. Dr. Terry again commented on Plaintiff's continued complaints of pain despite "no evidence of any kind of a herniated disc" in May of 2006. AR 463.

Dr. Terry continued to express concerns regarding Plaintiff's efforts in June of 2006, noting that a recent FCE demonstrated an exaggeration of symptoms by Plaintiff:

> A complete physical examination does not show evidence of any kind of obvious strength deficits or obvious weakness, no atrophy, no evidence of any kind of obvious dermatomal neurologic deficits. It appears that from surgery she has done ok and actually improved, although her complaints have stayed with her.

AR 461. Dr. Terry again documented Plaintiff's lack of effort in August of 2006, noting that "[s]he has no actual strength deficits." AR 460.

Nearly two years later, Dr. Terry again noted that there was "[n]o evidence of any kind of problems" with respect to Plaintiff's claims of leg and back pain, and later commented that although Plaintiff was not experiencing atrophy and had no visible muscle spasms, she continued to ambulate "in a crouched over fashion which is not explained by anything anatomically." AR 453. In April of 2009, Dr. Terry implied that Plaintiff's ongoing complaints may be the result of drug-seeking behavior: "It is notable that I feel the same as Dr. Bryan who did an Independent Medical Exam for her that she certainly is [sic] high likelihood of being addicted to narcotics." AR 452.

Dr. Keown also expressed skepticism as to the necessity of the cane during her consultative examination in July of 2010. In addition to noting that Plaintiff failed to "provide adequate effort" that would permit an evaluation of her strength, Dr. Keown opined that there was "no reliable objective evidence for use of [a] hand-held assistive device at any time." AR 625-26. She also noted that Plaintiff "insists upon using this hand-held assistive device" despite "using it in the right hand and complaining of left hip pain." AR 626. She further noted that Plaintiff was able to climb onto the examining table without assistance. AR 626.

Simply put, there is little evidence in the record to suggest that Plaintiff's condition requires the use of cane, other than her subjective complaints of pain. Plaintiff's paltry argument that the cane is medically-required does not persuade the Court otherwise. The Court thus finds no error in the ALJ's conclusion that Plaintiff is able to perform light work.

## V. CONCLUSION

For all of the foregoing reasons, Plaintiff's motion for judgment on the administrative record (DE 17) is DENIED. An appropriate Order will accompany this memorandum.

BARBARA D. HOLMES
United States Magistrate Judge